## Taylor, et al. v. Fuller, et al.

(Decided February 5, 1915.)

### Appeal from Perry Circuit Court.

1.  Liens.—Statements or acts of a lienor can not estop him to claim a lien as against the owner, where the owner was not misled or induced to change his position by the statements or acts.
2.  Liens—Waiver.—To establish a waiver of a lien, it must clearly appear that the lienor so intended, and that the waiver was based upon a valuable consideration.

JOHN B. EVERSOLE for appellants.

J. E. JOHNSON and J. M. BARKER for appellees.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

The appellant, Hazard Dean Coal Company, was a company engaged in mining coal in Perry county, Kentucky, and the appellant, J. M. Taylor, was a contractor for the Hazard Dean Coal Company, with a contract to build a number of houses for the coal company upon its premises, in which its miners were to live. Appellees, W. J. Fuller and J. H. Elam, were two carpenters who were employed by J. M. Taylor to assist in constructing the houses which he was building for the Hazard Dean Coal Company. It seems that they commenced work about the middle of October and were to be paid the sum of two dollars per day for their services, and they ceased to work about the 24th day of December. It seems that during this time, probably the first regular pay day of the company which occurred after they began to work, they went to the company's office with Taylor, and, by his directions, the manager of the company paid each of them a part of the wages which were due them for their work at that time. At the two other regular pay days of the company which occurred during their employment, they were present when the manager paid a sum of money to Taylor, and on each occasion he immediately, but not at the office of the company, paid each of them a portion of what their wages amounted to at that time. They seemed to understand that, according to the custom or regulation prevalent in that community, or at least with the employees of the coal company, they were not to be paid in full on any pay day, but a certain amount of their wages was to be reserved; but, at the time they quit work, Taylor owed Elam a balance of $12.20, and he owed Fuller a balance of $57.50. There seems to be no controversy about the amount of the indebtedness in either case. On the 5th day of January, following, they, each of them, caused a notice to be served upon the company, notifying it of the amount which was due them for their services and their purpose to file in the clerk's office of the county court a lien upon the houses upon which they had worked, and the lands upon which the houses were situated to secure them in the payment of the amounts due them. Thereafter, on the 11th day of February, 1914, each of them filed and caused to be recorded in the clerk's office of the Perry County Court a statement, subscribed and sworn to by them, as provided for by Chapter 79 of the Kentucky Statutes, and the amend-

ments thereto, showing the amount due each of them, and that there were no off sets against them, and upon what property they asserted a lien, and thereafter, on the 14th day of February, they filed a petition in equity in the Perry Circuit Court against J. M. Taylor and the Hazard Dean Coal Company, in which they sought a personal judgment against Taylor and the enforcement against the coal company of their lien upon the property to satisfy the indebtedness above stated.

The appellant coal company relied for its defense against the enforcement of the lien upon the fact, as they alleged, that the appellees had waived their lien, and further, by their acts and conduct, they were estopped to assert or enforce their lien. Upon this issue the proof of the case seems to have been taken. The coal company introduced evidence showing that they had entirely paid Taylor the price they were to pay him under his contract, upon the pay days heretofore mentioned, and that one Heath, who seems to be some kind of an agent of the company, and who had supervision of the construction of the houses and the mining of the coal, had requested Fuller and Elam to make a report of the number of days they had worked, from time to time, to the company, and said to them that it would pay them their wages, but that, for some reason or other, Fuller and Elam did not desire to do so, and failed to do so. As to whether or not this notice was ever received by them was a matter of serious controversy in the testimony, since they each deny positively that Heath ever made any such request of them, except in the case of Fuller, who stated that Heath had directed him to do that, after he had quit work, and that, in accordance with that direction, he had applied to the manager of the coal company, who declined to pay him anything; but whether the contention of the company is correct or not in that regard there does not seem to have been any obligation upon either Fuller or Elam to make report of their time to the company, because they were employed by Taylor, and were acting under his directions, and each testified that Taylor informed them that he reported the time they had each worked to the company, and Taylor testified that he had paid to each of them all of the money which the company had paid him for them.

As to the estoppel plead, it does not appear from the evidence that the coal company was led to pay Taylor the entire amount of the price of building the houses which it had contracted to pay him, nor in any wise caused the company to do or not to do anything with regard to the matter.

The rule bearing upon the waiver of a lien, as expressed in 25 Cyc., 672, is, that a lien may be waived by an express agreement, based upon a valuable consideration, or it may be waived by implication, the question whether or not there is a waiver in a particular case being one of intention to be determined by the circumstances.

That there was any express agreement on the part of either Fuller or Elam to waive their lien no one contends, and there is no contention that there was any consideration for the waiver upon the part of either of them, and we do not find any conduct of either of them which is inconsistent with the existence of the lien.

In 27 Cyc., 262, it is said: ''That in order to establish a waiver of a lien the intention to waive must clearly appear, and the waiver of a lien will not be presumed or implied contrary to the intention of the party whose rights would be injuriously affected thereby, unless by his conduct the opposite party was mislead to his prejudice into the honest belief that some waiver was intended or consented to.''

The mere fact that Taylor testified that Fuller said to him during the progress of the work that he was looking to him for his wages would not amount to a waiver of a lien, because, even if he had taken Taylor's promissory note for the debt, it would not have discharged the lien, unless the note had been paid. (Mivalaz v. Genovely, 28 R., 203.)

In 27 Cyc., 277, it is said: ''Statements or acts of a lienor cannot estop him to claim a lien as against the owner, where he was not misled or induced to change his position thereby.''

There is no evidence for the appellants in this case which even tends to show that the appellant coal company was misled or induced to change its position with regard to the matter in controversy by any statement or act of either Fuller or Elam.

It appearing that the appellees come within that class, who, by the provisions of Chapter 79 of the Ken-

tucky Statutes, are entitled to assert a lien upon the property of the appellant coal company for the unpaid balance of the wages due each of them, and the appellees having complied with the statute by giving the notice, and filing the statements which are required by law to perfect their lien, it is, therefore, adjudged that the judgment appealed from be affirmed.