CLIFF HOOFMAN, Justice, dissenting. Because I believe that the majority errs in reversing and remanding this case and overlooks this court’s prior case law, I respectfully dissent. While the majority opinion states that it is unnecessary to address appellant’s second point on appeal, the two points are so interrelated that I think they must be addressed together, and I do so in this dissent. Appellant first contends that the trial court abused its discretion by providing erroneous and misleading instructions to the jury concerning |; (-“informed consent” rather than her proffered instruction. Specifically, she argues that the trial court provided the jury with AMI Civ. 1508 (2013) and AMI Civ. 1509 (2013) over her objection, which concern whether a patient has been provided with sufficient information in order to provide consent. She alleges that these instructions were misleading because she argues that her case did not involve whether Dr. Williams provided adequate information but whether Dr. Williams received actual consent. In support, she cites to Arkansas Code Annotated §§ 20-9-601 to -603 for a recitation of Arkansas’s law regarding consent in general and alleges that “consent” and “informed consent” are two entirely separate issues. Additionally, she explains that the trial court’s instructions did not provide the jury with guidance as to the important elements that are required for consent, “including whether Mr. Nash was even capable of providing consent, and if he was in fact ‘of unsound mind[,]’ whether there was implied consent requiring both the existence of an emergency AND evidence that no other authorized person was ‘immediately available’ who could provide consent.” Finally, appellant contends, in what she identifies as her second point on appeal, that “The Evidence Was Sufficient For A Jury To Find That Robert Nash Suffered Injury As A Result Of Undergoing A Nasogastric Procedure Performed Without Proper Consent.” Specifically, she outlines the evidence presented at trial that could have formed a basis in the evidence for the trial court to use in giving her proffered instruction, had the court not refused to do so. Appellee disagrees and contends that the trial court did not abuse its discretion. I would affirm. |17A party is entitled to a jury instruction when it is a correct statement of the law and there is some basis in the evidence to support giving the instruction. Boellner v. Clinical Study Ctrs., LLC, 2011 Ark. 83, 378 S.W.3d 745. However, this court will not reverse a trial court’s refusal to give a proffered instruction unless there was an abuse of discretion. Edwards v. Stills, 335 Ark. 470, 984 S.W.2d 366 (1998). Furthermore, it is not error for the trial court to refuse a proffered jury instruction when the stated matter is correctly covered by other instructions. Id. When instructions are requested that do not conform to the Arkansas Model Jury Instructions (“AMI”), they should be given only when the trial court finds that the AMI instructions do not contain an essential instruction or do not accurately state the law applicable to the case, due to our longstanding preference in favor of AMI instructions over non-AMI instructions. Nelson v. Stubblefield, 2009 Ark. 256, 308 S.W.3d 586; Boellner, supra. Additionally this court has said that AMI instructions are to be used as a rule, and non-AMI instructions should be used only when an AMI instruction does not exist or cannot be modified. Allstate Ins. Co. v. Dodson, 2011 Ark. 19, 376 S.W.3d 414. It is error for the trial court to fail to instruct the jury on a statute applicable to the case; however, it is also error for the trial court to instruct the jury on an inapplicable statute. Id. Portions of a statute not applicable to the facts of the case must be deleted. Id. Specific objections to instructions are necessary to preserve an issue for appeal. Ark. R. Civ. P. 51. Specifically, Arkansas Rule of Civil Procedure Rule 51 states, At the close of the evidence or at such earlier time as the court may reasonably direct, any party may submit requested jury instructions to the court. The court shall inform counsel of its proposed action upon the requested instructions and also inform |1scounsel of all other instructions it proposes to submit to the jury. The court shall instruct the jury prior to the arguments of counsel. No party may assign as error the giving or the failure to give an instruction unless he objects thereto before or at the time the instruction is given, stating distinctly the matter to which he objects and the grounds of his objection, and no party may assign as error the failure to instruct on any issue unless such party has submitted a proposed instruction on that issue. Opportunity shall be given to make objections to instructions out of the hearing of the jury. A mere general objection shall not be sufficient to obtain appellate review of the court’s action relating to instructions to the jury except as to an instruction directing a verdict or the court’s action in declining to do so. (Emphasis added.) Therefore, this court has interpreted this rule to require specific objections in order to alert the trial court as to why the instruction is wrong. Allstate Ins. Co., supra. Additionally, this court has held that a general objection to a jury instruction is permissible only if the instruction is inherently erroneous, meaning the instruction could not be correct under any circumstance, and is binding in nature. Id. At trial, appellant offered the following objections to two of the jury instructions at issue in this appeal and proffered a modified jury instruction. Your Honor, the Plaintiff objects to the giving of AMI 1508. The position of the Plaintiff is this is not an informed consent case. 1508 is an instruction designed for informed consent cases and incorporates the Arkansas statutes on informed consent. We’re not claiming in this case adequacy of information to Mr. Nash. We’re claiming that he refused — that that was immaterial as to what information he was or was not supplied with, and we’re not going to claim that any information was or was not adequate. I don’t even know that. So we would object to the giving of AMI 1508. [[Image here]] And I have a — In regard to that your Honor, I would proffer the Plaintiffs version of AMI 1508, which is modified to incorporate parts of Arkansas Code Ann. 20-9-601 and the following. [[Image here]] The Plaintiffs next object to AMI 1509. It’s — for the same reasons. This is an informed consent instruction. And, honestly, there’s no proof of lack of any informed consent and we’re not claiming that. And this is part of the informed consent statute [ i9which, in the Plaintiffs belief, is inapplicable, and that there are no AMI instructions that particularly apply to consent. And that’s why we have relied on the statute in drafting instructions that are substantially modified. (Emphasis added.) In pertinent part, the trial court read the following jury instructions to the jury, encompassing AMI Civ. 1501, 1508, and 1509 (2013): [AMI 1501 as modified[1]] In treating and/or obtaining the consent of a patient, a physician must possess and apply with reasonable care the degree of skill and learning ordinarily possessed and used by members of his profession in good standing, engaged in the same type of practice in the locality in which he practices, or in a similar locality. A failure to meet this standard is negligence. In determining the degree of skill and learning the law required of Victor Williams, M.D., and in deciding whether he used the degree of skill and learning which the law required, you may consider only the expert testimony of the physicians. In deciding whether any negligence of Victor Williams, M.D. was a proximate cause of injuries and/or death of Robert Nash, that otherwise would not have occurred, you may consider only the expert testimony of the physicians. In considering the evidence on any other issue in this case, you are not required to set aside your common knowledge, but you have a right to consider all the evidence in light of your own observations and experiences in the affairs of life. The fact that a death occurred is not, of itself, evidence of negligence on the part of anyone. [AMI 1507 as modified[2]] Nancy Millsap, as Special Administra-trix of the Estate of Robert Nash, asserts two separate grounds for recovery: First, that there was negligence on the part of Victor Williams, M.D.; and, second, that Victor Williams, M.D. failed to obtain proper consent before he placed a nasogastric tube. 12pWith respect to the claim of negligence, Nancy Millsap, as Special Admin-istratrix of the Estate of Robert Nash, has the burden of proving each of three essential propositions: First, that the Plaintiff has sustained damages; second, Victor Williams, M.D. was negligent; and, third, that such negligence was a proximate cause of damages to the Plaintiff. With respect to the failure to obtain consent, Nancy Millsap, as Special Ad-ministratrix of the Estate of Robert Nash, has the burden of proving each of three essential propositions: First, that the Plaintiff sustained damages; second, that the nasogastric tube was placed without consent; third, that such failure was a proximate cause of damages to the Plaintiff. It will be necessary for you to consider separately each asserted ground for recovery. If you find from the evidence that every essential proposition with respect to any one ground for recovery has been proved, then your verdict-should be for the Plaintiff and against the party or parties against whom that ground for recovery is asserted; but if you find from the evidence that any essential proposition with respect to any one ground for recovery has not been proved, then your verdict with respect to that ground for recovery should be for the Defendant. [AMI 1508 ] In obtaining consent to perform a procedure, a surgeon is under a duty to supply adequate information to enable the patient to make a reasoned and intelligent decision to give or withhold consent. Other than in an emergency situation, the information required is that type as would customarily have been given at the time of treatment to a patient in a similar situation by other surgeons with similar training and experience practicing in the locality in which he practices or in a similar locality. [AMI 1509 ] In determining whether the failure to obtained an informed consent was a proximate cause of any damages sustained by Nancy Millsap, as Special Ad-ministratrix of the Estate of Robert Nash, you may consider the following factors: (a) Whether Robert Nash knew, or whether a person of ordinary intelligence and of awareness in a position similar to that of Robert Nash could reasonably be expected to know, of the risks or hazards inherent in such a procedure; (b) Whether Robert Nash would have undergone the procedure, regardless of the risks involved, or whether he did not wish to be informed thereof; (c) Whether it was reasonable for Doctor Williams to limit disclosure of information because that disclosure could be expected to adversely and substantially affect Robert Nash’s condition. Jain place of the trial court reading AMI Civ. 1508, appellant proffered the following modified jury instruction that she alleges incorporates Arkansas Code Annotated §§ 20-9-601 to -608: Arkansas law provides a doctor is required to obtain consent before treating or performing medical procedures on a patient. Consent may be written or oral and any adult may consent for himself or herself. If an adult is of unsound mind, then any adult child of the patient may provide consent. “Unsound mind” means the inability to perceive all relevant facts related to one’s condition and proposed treatment so as to make an intelligent decision based thereon, regardless of whether the inability is only temporary, has existed for an extended period of time, or occurs or has occurred only intermittently. The inability may be due to natural state, age, shock or anxiety, illness, injury, drugs or sedation or other cause of whatever nature. An individual shall not be considered to be of unsound mind based solely upon his or her refusal of medical care or treatment. Consent is not required when an emergency exists AND there is no one immediately available who can provide consent for the patient. An emergency is defined as a situation in which, in competent medical judgment, the proposed procedure is immediately or imminently necessary and any delay occasioned by an attempt to obtain a consent would reasonably be expected to jeopardize the life, health or safety of the person affected. At trial, appellant objected to the inclusion of AMI Civ. 1508 and 1509 instead of her proffered jury instruction, explaining that she was not arguing whether the information supplied was adequate but that “[Nash] refused.” The jury had already been instructed that the failure to obtain proper consent was a ground for recovery in the modified AMI Civ. 1507 jury instruction proposed by appellant. Therefore, it was not error for the trial court to refuse the proffered jury instruction when the jury had been instructed in other instructions that the failure to obtain consent was a ground for recovery. See Edwards v. Stills, 835 Ark. 470, 984 S.W.2d 366 (1998). ^Additionally, the trial court did not abuse its discretion, as the majority opines, for including AMI Civ. 1508 and 1509 in its instructions. The first paragraph in the notes on use of AMI Civ. 1508 provides that “[t]his instruction should be given when a question is submitted as to whether adequate information was supplied by the medical care provider in connection with the granting or withholding of consent to treatment.” (Emphasis added.) Similarly, the first sentence in the notes on use of AMI Civ. 1509 provides that “[t]his instruction should be given in addition to AMI 1501 when a question is submitted as to whether adequate information was supplied by the medical care provider in connection with the granting or withholding of consent to treatment.” (Emphasis added.) AMI Civ. 1508 explained to the jury that not only was Dr. Williams required to obtain consent but also that he was obligated to supply adequate information for Nash to decide whether to give or withhold consent. Furthermore, the evidence presented in Dr. Williams’s testimony supported such an instruction when Dr. Williams testified that he met with Nash and explained the reasons why he thought that he needed an NG tube. At trial, Dr. Williams testified that on November 6, 2009, he placed an NG tube after Nash consented to the procedure by “nodding his head” after he explained why he thought the procedure was necessary. He explained that Nash was cooperative during the NG placement, that Nash appeared to be of sound mind, and that he did not speak with any family members because Nash had consented to the procedure. Therefore, there was some basis in the evidence to support giving the instruction. See Boellner, supra. While the majority states that this testimony was “self-serving,” this court has repeatedly held that a party is entitled to a jury instruction when it is a correct statement of Igjthe law and there is some basis in the evidence to support giving the instruction. Id. The fact that the evidence was presented through the testimony of Dr. Williams is immaterial. Thus, the inclusion of this instruction and the additional instruction of AMI Civ. 1509 was not misleading but instead may have been beneficial to appellant, and I find that appellant faded to demonstrate that she was prejudiced or that the trial court abused its discretion in giving the two jury instructions. See generally Edwards, supra. Appellant also argues on appeal that her proffered jury instruction was necessary to provide the jury with guidance on the important elements that are required for consent, “including whether Mr. Nash was even capable of providing consent, and if he was in fact ‘of unsound mind[,]’ whether there was implied consent requiring both the existence of an emergency AND evidence that no other authorized person was ‘immediately available’ who could provide consent.” She further identified on appeal testimonial evidence that supported the inclusion of her proffered instruction. However, contrary to the majority opinion, ap-pellee correctly contends that appellant failed to state this particular argument as a basis for her objection at trial. At trial, appellant specifically stated the following when objecting to AMI Civ. 1508 and offering the proffered instruction: “We’re claiming that he refused — that that was immaterial as to what information he was or was not supplied with, and we’re not going to claim that any information was or was not adequate. I don’t even know that. So we would object to the giving of AMI 1508. [[Image here]] | ¾⅜And I have a — In regard to that your Honor, I would proffer the Plaintiffs version of AMI 1508, which is modified to incorporate parts of Arkansas Code Ann. 20-9-601 and the following. (Emphasis added.) While the majority holds that “it is obvious from the focus of the evidence presented in this trial ... that Millsap’s claim was that Mr. Nash either did not consent to the placement of the NG tube or was unable to give consent because of mental impairment,” the appellant cannot change the specific arguments made before the trial court now on appeal, even if the new argument may be meritorious. In fact, it is well settled that this court will not consider arguments raised for the first time on appeal. Brown v. Lee, 2012 Ark. 417, 424 S.W.3d 817. Moreover, a party cannot change the grounds for an objection or motion on appeal but is bound by the scope and nature of the arguments made at trial. Id. Appellant was required to make a specific objection to alert the trial court as to why she thought the instruction was wrong and was required to be equally specific as to why her proffered modified, instruction should have been given. She may not on appeal change the scope of this argument. Allstate Ins. Co., supra; Bell v. Misenheimer, 2009 Ark. 222, 308 S.W.3d 120. Accordingly, I think we are precluded from addressing the merits of this new argument on appeal, and I would affirm the trial court. BAKER and GOODSON, JJ., join. . The court accepted appellant's modified version of AMI 1501 over appellee's objection, striking the word "informed” before “consent.” . The court accepted appellant’s modified version of AMI 1507 over appellee’s objection, striking the word “informed” before "consent.”